Oyez, oyez. All persons having business with the Honorable United States Court of Appeals to the Third Circuit are advised to draw near and give their attention. For this court is now in session. God save the United States and its Honorable Members. Please be seated. Good morning, everyone. First matter is Schneyder v. Smith. Good morning, Your Honors, and may it please the Court. Peter Carr on behalf of Appellant Gina Smith. I would like to reserve two minutes for rebuttal. Time permitting, I plan to address both of the issues on appeal, but I'd like to start with absolute immunity. When this Court heard this case previously on the plaintiff's appeal following the grant of our motion to dismiss, it declined to accept our argument with respect to absolute immunity, primarily because it characterized the prosecutor's conduct in this case as administrative rather than advocated. In light of the Supreme Court's subsequent decision in Goldstein, How does Goldstein help you? All Goldstein said is that some kinds of ministerial or administrative decisions are so tied to the judicial, the litigation process, the prosecutorial process, they can't be separated out. That's not this case. This is not the failure to turn over Brady information or Giglio information. This is an attorney who decided that she was going to determine by herself when, if ever, the person she had detained was going to be released. That's not the kind of decision that they're talking about in Goldstein. The first way that Goldstein helps us, Your Honor, and the first way that Goldstein changes the case is that it shows that the analysis is not quite as simple and straightforward as was put forth in the original decision in this case. One can no longer simply say that a prosecutor Well, forget the original decision, and maybe you can address my question that I asked you. What in Goldstein, the way they talk about the administrative duties of a prosecutor, what in that language or in that case helps you in this case? The central aspect of Goldstein that helps us is that it distinguishes between what I would call prosecutorial administrative duties and general office administrative duties, administrative duties that merely happen to have been undertaken by a prosecutor, such as hiring employees, making payroll determinations, maintaining the physical facility. So ignoring a judicial order is a prosecutorial Well, I think that both parties in the district court agree that there are two components to what Goldstein says is what I'm characterizing as a prosecutorial administrative duty. One, it needs to be connected to the judicial process or to the prosecutor's trial advocacy duties. And two, there's a possible requirement that it involves legal knowledge and the exercise of related discretion. So why isn't it simply an administrative or a ministerial task to make certain that a person who is unjustifiably imprisoned gets released? I absolutely agree, Judge Smith, that it is an administrative task. But under Goldstein, that doesn't end the analysis. If one considers what the tasks were in Goldstein, one of them was maintaining an information system. For what purpose? In plain English, what the court meant by that in Goldstein was they needed to maintain a list or a computer database of informants who received plea deals or favorable sentences. For what purpose? The ultimate purpose would be to make a decision at trial as to whether to turn over impeachment evidence, which could affect the prosecutor's advocacy in that he will now face impeachment evidence. Isn't a much more straightforward reading of Goldstein is that it simply extends to supervisors in a prosecutor's office the same immunity that the prosecutor under their supervision has when doing something intimately connected with the trial function? There's no question, Your Honor, that that's an aspect of Goldstein, but I don't concede by a long shot that that's the sole relevant aspect of Goldstein. Goldstein also shows that we can't simply carve out the prosecutor's duties to the administrative portion because that's what the plaintiff in Goldstein was trying to do. The plaintiff in Goldstein was trying to say, oh, I'm not talking about the prosecutor not turning over Brady or Giglio material at trial. What kind of administrative task could a prosecutor undertake that wouldn't be covered by absolute immunity? Administrative tasks that merely happened to have been undertaken by a prosecutor, much as judicial immunity would not apply simply to tasks such as hiring that merely happened to have been undertaken by a judge. But if the administrative tasks would think disobeying a judge's order was an administrative responsibility. Well, if it's not an administrative responsibility, then in candor I don't understand what the argument against absolute immunity is. Have you read Goldstein? Have you read the language of Goldstein? I certainly have, Your Honor. Have you read what they said about Imbler and Imbler's importance to the analysis in Goldstein? Have you read that? Absolutely, Your Honor. Don't they talk about the problem with allowing prosecutors to get into a decision where they can't be concerned about personal liability as they go about exercising their prosecutorial functions? That's certainly one of the two. Isn't that exactly what we want here? Do we want to create a situation where a prosecutor can decide that she's beyond the reach of a court, doesn't have to worry about personal liability, and can decide to tell someone, I'll decide when and if I let the person out of. Isn't that exactly the situation that the court suggests in Imbler would not be appropriate for absolute immunity? No, Your Honor. One of the concerns that the court expresses in both Goldstein and Imbler is that the prosecutor not be forced to stand trial for the normal activities of his job. Why? Why? Because otherwise it will dissuade people from serving as prosecutors. Otherwise, litigants will be able to endlessly harass prosecutors. They don't say Imbler is serving as prosecutors. They talk about neutralizing the independent exercise of judgment on the part of the prosecutor. The person shouldn't be in a position where in order to perform their job, they have to worry about personal liability. That's what the court in Goldstein talked about. That's what Imbler talked about. And that whole discussion in Imbler about Imbler in Goldstein, that was the first of it. And as I read it, and I read it again this morning, it seems like this is exactly the kind of situation that the policy reasoning behind Imbler in Goldstein would mitigate against. Because you want to have prosecutors, I would hope you would agree, concerned about prosecutorial liability when they say something like, I'll decide when the person gets out of custody. Is that the kind of system you want us to erect? I think, Your Honor, that it's pretty clear that we read Goldstein differently, that I read Goldstein as having a second concern, and that's with respect to the harassment of prosecutors, with respect to lawsuits. But maybe it would be helpful if I simply moved. I didn't hear what you just said. I read Goldstein as? As involving two components. One is the one that Your Honor described, that is we want prosecutors to be able to exercise free judgment, and that's one of the rationales behind that. What judgment is there to exercise about obeying a judge's order? Well, certainly that brings us to a question, Judge Stearns, of whether there was a judicial order here to obey. Why isn't that a question? Exactly.